Affirmed and Memorandum Opinion filed October 5, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00320-CR

___________________

 

Rolando Sierra, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 40th District Court

Ellis County,
Texas



Trial Court Cause No. 33198CR

 



 

 

MEMORANDUM OPINION

A jury found appellant Rolando Sierra guilty of
aggravated assault with a deadly weapon, assessed punishment at ten years’
imprisonment and a fine of $10,000, and recommended community supervision.  In
accordance with the jury’s verdict, the court suspended the sentence and placed
appellant on ten years’ community supervision.  In three issues, appellant
challenges the sufficiency of the evidence to support the jury’s finding of
guilt and argues the trial court erred in admitting certain evidence.  We
affirm.

I.  Factual and Procedural Background

Based on events occurring in the late afternoon and
early evening of April 14, 2008, appellant was indicted for the family violence
assault of Jennifer Carter and the aggravated assault of Frank Boehler.  The
two charges were tried together before a jury, which found appellant not guilty
of family violence assault and guilty of aggravated assault.

According to testimony elicited by the State, Jennifer
telephoned her mother, Rebecca Carter, several times on the day of the alleged
assault.  Jennifer asked Rebecca to collect Jennifer and her children from the
home Jennifer shared with appellant.  According to Rebecca’s common-law
husband, David Hunter, Jennifer told Rebecca she and appellant had been
fighting and appellant had thrown her against the wall.  When Jennifer’s son
called Rebecca, she finally decided to go to Jennifer’s house.

Hunter drove Rebecca and Boehler, a family friend who
was visiting Hunter and Rebecca, in Hunter’s pickup truck.  After they arrived
at appellant’s and Jennifer’s home, Rebecca agreed to talk to appellant with
Jennifer and told the men to wait outside.  Appellant, however, was angry that Jennifer
had invited her mother inside and began yelling at Jennifer.  At that point,
the two men went inside, and Boehler said, “Why don’t you just listen to her?” 
Appellant ran to Boehler and hit him in the face.  They started fighting, and appellant
tried to throw Boehler through a window.  According to Boehler, Rebecca or
Jennifer separated the men and Boehler thought the fight was over except
appellant told Boehler, “he’s got something for me” and ran to his room.

Everyone else left the house when appellant ran to
the back bedroom.  Boehler went to the truck, grabbed a hammer, and, according
to Rebecca, started toward the house with the hammer in his hand.  Rebecca then
saw Boehler stop, turn around, and start to run.  While Boehler was running,
Rebecca heard a gunshot passing over her head.  Appellant was running after
Boehler and shooting.  Boehler threw the hammer in the truck and ran around
toward the front of the truck.  According to Rebecca, the two men then ran
around the truck and appellant shot Boehler, who fell face down.  Appellant
then shot Boehler again.  According to Boehler, one shot passed through his hip
and another through his diaphragm and liver.  A bullet hole was also found in
the house across the street.

Rebecca heard appellant tell Boehler he was going to
kill him.  Rebecca shouted, “no,” and appellant walked away.

Rebecca testified Boehler did not have the hammer when
appellant shot him.  According to Hunter, before appellant shot Boehler in the
back, Boehler was saying, “I give up.”

In addition to phoning Rebecca, Jennifer also had called
her brother Jason several times.  Jason and his girlfriend arrived during the
shooting and Jason observed Boehler “running with his hand in the air and
[appellant] was just following shooting.”  Boehler had his hands up, did not
have anything in his hands, and was repeating, “It’s over.”

Appellant testified in his own behalf.  According to
appellant, Rebecca entered his house, cursing at him and calling him names.  A
short time later, Hunter and Boehler entered.  Both looked aggressive, and
Boehler was “crashing his hands together.”  Appellant told Rebecca to get out.

Boehler then told appellant to “shut . . . up” and
not talk to Rebecca “like that.”  Next, Boehler approached appellant. 
Appellant believed Boehler and Hunter were going to attack him and told them to
leave.  When appellant tried to grab Boehler’s shirt, Boehler blocked him and
appellant punched Boehler.  Boehler punched back, and appellant tried to throw
him through a window.  Boehler tried to bite appellant, and appellant kneed
Boehler, knocking him unconscious.  When appellant turned toward Hunter,
Boehler ran from the house, saying something to appellant.  Appellant saw
Boehler get something from the truck and believed Boehler had a gun.

Appellant went to his room to get a gun to protect
himself.  He saw Rebecca trying to hold Boehler outside, so he ran to the door and
fired a shot as soon as he saw Boehler.  He fired again, but thought he had
missed twice.  When appellant fired the third time, Boehler fell on the grass. 
Appellant walked around Boehler with the gun still pointed at Boehler, then
retreated.  On cross-examination, appellant admitted Boehler never pointed a
gun at him.

Appellant also presented the testimony of Nelda
Allstot and Ruby Wesley, next-door neighbors who had witnessed the shooting.  Allstot
was in her back yard when she heard the pickup driver braking.  Although she
initially testified the driver left skid marks on the road, on cross-examination,
she admitted she had observed the marks later and could not be one hundred
percent certain the truck made them.  Allstot believed she saw someone she thought
was a teenager with a hatchet in his hand.  This person had been in a rage when
the truck first arrived.  Allstot testified the teenager was still running
after he was shot the first time (i.e., after the second shot was fired), but
in her statement given just after the shooting she indicated that the teenager
fell after being hit the first time and appellant then shot him again.

Wesley, Allstot’s mother, testified she went to the
front porch to watch what was happening next door.  She also testified a young
man was carrying a hatchet. She did not see him drop the hatchet, but she did
not see it in his hands after he first ran back to the house with it.  On
cross-examination, Wesley stated the young man was hiding behind the truck when
appellant shot him.  In her statement to the police, Wesley had described the
“hatchet” as a claw hammer.

The trial court instructed the jury on self-defense. 
The jury rejected the defense and found appellant guilty of aggravated assault
as charged in the indictment.

II.  Analysis

A.        Challenges to Legal and Factual Sufficiency of the
Evidence

            In issue one,
appellant argues the evidence is “factually/legally insufficient” to support
the jury’s finding of guilt.  He does not argue the evidence is insufficient to
support any of the elements of aggravated assault, but argues only that the
evidence is insufficient to support the jury’s rejection of his claim of self
defense.

In evaluating a legal-sufficiency challenge, we view
the evidence in the light most favorable to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether
we, as a court, believe the State’s evidence or believe that appellant’s
evidence outweighs the State’s evidence.  Wicker v. State, 667 S.W.2d
137, 143 (Tex. Crim. App. 1984).  The verdict may not be overturned unless it
is irrational or unsupported by proof beyond a reasonable doubt.  Matson v.
State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The trier of fact “is
the sole judge of the credibility of the witnesses and of the strength of the
evidence.”  Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App.
1999).  The trier of fact may choose to believe or disbelieve any portion of
the witnesses’ testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).  When faced with conflicting evidence, we presume the trier
of fact resolved conflicts in favor of the prevailing party.  Turro v. State,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim.
App. 1997).

In a factual-sufficiency
review, we examine the evidence in a neutral light.  Grotti v. State,
273 S.W.3d 273, 283 (Tex. Crim. App. 2008).  Only one
question is to be answered in a
factual-sufficiency review:  Considering all of the evidence in a neutral
light, was a trier of fact rationally justified in finding guilt beyond a
reasonable doubt?  See id.  Evidence can be factually insufficient in
one of two ways:  (1) when the evidence supporting the verdict is so weak that
the verdict seems clearly wrong and manifestly unjust; and (2) when the
supporting evidence is outweighed by the great weight and preponderance of the
contrary evidence so as to render the verdict clearly wrong and manifestly unjust. 
See id.  A reversal for factual insufficiency
cannot occur when the greater weight and preponderance of the evidence actually
favors conviction.  See id.  Although an appellate court has the ability
to second-guess the trier of fact to a limited degree, the factual-sufficiency review still should be deferential to the trier
of fact’s role as the sole judge of the weight and credibility given to any
witness’s testimony, with a high level of skepticism about the verdict required
before a reversal can occur.  See id.

On a self-defense claim, the defendant has the burden
of production and must bring forth some evidence to support the particular
defense.  Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).  But,
once the defense is raised, the State bears the burden of persuasion to
disprove the defense.  Id.  The burden of persuasion is not one that
requires the production of evidence; rather, it requires only that the State
prove its case beyond a reasonable doubt.  Id.  The issue of
self-defense is a fact issue to be determined by the jury, which is free to
accept or reject any defensive evidence on the issue.  Saxton v. State,
804 S.W.2d 910, 914 (Tex. Crim. App. 1991).  When a jury finds the defendant
guilty, there is an implicit finding against the defensive theory.  Zuliani,
97 S.W.3d at 594.

When reviewing a legal-sufficiency challenge on the
issue of self-defense, a reviewing court views the evidence in the light most
favorable to the verdict to see if any rational trier of fact could have found
(1) the essential elements of murder beyond a reasonable doubt, and (2) against
appellant on the self-defense issue beyond a reasonable doubt.  Hernandez v.
State, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist. 2010, pet. filed). 
“In a factual-sufficiency review of the rejection of a self-defense claim, we view
‘all of the evidence in a neutral light and [ask] whether the State’s evidence
taken alone is too weak to support the finding and whether the proof of guilt,
although adequate if taken alone, is against the great weight and preponderance
of the evidence.’”  Id. at 666 (quoting Zuliani, 97 S.W.3d at
595).

A person commits the offense of assault if that
person intentionally, knowingly, or recklessly causes bodily injury to another.
 Tex. Penal Code Ann. §
22.01(a)(1) (Vernon Supp. 2009).  The offense becomes aggravated assault if the
person committing the assault uses a deadly weapon during the commission of the
assault.  Id. § 22.02(a)(2).  A firearm is a deadly weapon.  Id. §
1.07(a)(17).

A person is justified in using force against another
when and to the degree he reasonably believes the force is immediately
necessary to protect himself against the other’s use or attempted use of
unlawful force.  Id. § 9.31(a).  A person is justified in using deadly
force: (1) if he would be justified in using force under section 9.31 of the
Texas Penal Code; and (2) when and to the degree he reasonably believes the
deadly force is immediately necessary to protect himself against the other’s
use or attempted use of unlawful deadly force.  Id. § 9.32(a)(1),
(2)(A).  The actor’s belief the use of deadly force was immediately necessary
is presumed to be reasonable if the actor (1) knew or had reason to believe
that the person against whom deadly force was used unlawfully and with force
entered or was attempting to enter unlawfully and with force the actor’s
occupied habitation, and (2) did not provoke the person against whom the force
was used, and (3) was not otherwise engaged in criminal activity, other than a
Class C misdemeanor.  Id. § 9.32(b).

It is undisputed that appellant shot Boehler twice,
injuring Boehler in the hip, liver, and diaphragm.  Although, after the initial
altercation inside appellant’s house, Boehler went to the truck and started to
return carrying a hammer, Rebecca testified Boehler stopped, turned around, and
ran.  Appellant then fired a shot, missing Boehler.  Boehler testified he threw
the hammer in the truck and put his hands in the air, but appellant shot again,
hitting Boehler in the hip.  After Boehler fell face down, appellant shot a
third time, hitting Boehler in the back.  Viewed in the light most favorable to
the verdict, the evidence is legally sufficient to establish aggravated assault
and to support the jury’s implicit rejection of appellant’s theory of self-defense. 
See Hernandez, 309 S.W.3d at 665.

Appellant, however, contends the following evidence,
in addition to his own testimony, supports his theory of self-defense:  (1) Jennifer’s
testimony (a) Boehler was in a rage when he arrived at her home, was “all bowed
up” and “crazy,” when he entered, (b) after leaving the house, Boehler went to
the truck and retrieved a weapon that had a long black handle, and (c) Boehler was
running back to the house, and looked as if he was about to hurt someone when
appellant quickly came from the house and shot Boehler; (2) Allstot’s testimony
(a) Boehler was stomping back to the house, holding an object with a long
handle and acting with determination, (b) Boehler stopped for a second and ran
to the truck after appellant fired the first shot, but never threw the object
down, (c) although Boehler bent to one side after the second shot, he continued
to run until appellant fired the third shot, and (d) Boehler never held his hands
up as though he were retreating or giving up; and (3) Boehler’s (a) equivocal
testimony about whether he had smoked marijuana on the night of incident and (b)
his admission he had retrieved a hammer from the truck, walked back toward appellant’s
residence and never gave any verbal indication he was ending the fight.[1]

Jennifer shared a home with appellant, and he was the
father of two of her children.  Allstot viewed the events from the distance of
her neighboring porch.  Viewing the evidence in a neutral light, we cannot
conclude that the evidence supporting the verdict is so weak the verdict seems
clearly wrong and manifestly unjust or that the supporting evidence is
outweighed by the great weight and preponderance of the contrary evidence so as
to render the verdict clearly wrong and manifestly unjust.  See Hernandez,
309 S.W.3d at 666.  The evidence is factually sufficient to support the jury’s
verdict and the implicit rejection of appellant’s theory of self-defense.

Having concluded the evidence is legally and
factually sufficient to support the jury’s verdict, we overrule appellant’s
first issue.

 

 

B.        Challenges to Evidentiary Rulings

            In issues
two and three, appellant challenges the trial court’s admission of two pieces
of evidence.  We review a trial court’s decision to admit
or exclude evidence under an
abuse-of-discretion standard.  Mozon v. State, 991
S.W.2d 841, 847 (Tex. Crim. App. 1999).  Under this standard, we reverse only
if the trial court’s ruling is outside the zone of reasonable disagreement.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g).

1.         Did
the trial court abuse its discretion in admitting Boehler’s testimony about a
statement appellant made?

In issue two, appellant contends the trial court
admitted impermissible hearsay.  The statement to which appellant refers
occurred in the following context:

Q.  [BY THE PROSECUTOR]  How did the fight come to an end?

A.  I don’t know if it was Jennifer or if it was Becky that
finally got in between us and split us apart.

Q.  All right.  Was the fight over at that point?

A.  Yes, sir.  Besides Rolando [appellant] telling me he’s
got something for me.

Q.  All right.  Well, that fight was over; is that correct?

A.  Yes, sir.

Q.  And then what did he say to you?

A.  Then he said - -

[DEFENSE COUNSEL]: Objection,
Judge, hearsay.

THE COURT: Overruled.

Q.  [BY THE PROSECUTOR]  What did he say to you?

A.   He said that I’ve got something for you.

As an initial matter, we observe the testimony to
which appellant subsequently objected, i.e., Boehler’s testimony appellant said
he “had something” for Boehler, was previously introduced by Boehler’s
unresponsive, and unobjected-to, testimony the fight was over except for
appellant’s telling Boehler “he’s got something for me.”  To preserve error for
appellate review, a party must timely object and obtain a ruling.  See Tex. R. App. P. 33.1(a)(1)(A).  To be
considered timely, the objection must be made at the first opportunity or as
soon as the basis of the objection becomes apparent.  See Lagrone v. State,
942 S.W.2d 602, 618 (Tex. Crim. App. 1997).  Appellant has not preserved this
issue for review. See Luna v. State, 268 S.W.3d 594, 604 (Tex. Crim.
App. 2008) (appellant’s objection to testimony was untimely because it was made
after question was asked and answered).

Even were the issue preserved, however, it is without
merit.  A criminal defendant’s own statements, when being offered against him,
are not hearsay.  See Tex. R.
Evid. 801(e)(2); Trevino v. State, 991 S.W.2d 849, 853 (Tex. Crim.
App. 1999).

For these reasons, we overrule appellant’s second
issue.

2.         Did the trial court abuse its
discretion in admitting two State’s exhibits?

In issue three, appellant complains of the trial
court’s admission of State’s Exhibits 71 and 72.  As explained by Investigator
Michael Hix, of the Ellis County Sheriff’s Department, Exhibit 71 is a
satellite photograph of the area where the offense occurred, with measurements
and elements added to show the locations of the pickup truck and bullet
fragments and shell casings found at the crime scene.[2]  Exhibit 72 is “an
aerial view, another satellite photograph, of the whole entire housing addition
where those residences [described by the witnesses] are located.”  Exhibit 72 includes
house numbers over the residences.

Appellant objected to the admission of these exhibits
on the ground they were “misleading and erroneous.”  Counsel argued, “[T]hey don’t
faithfully represent what they purport to represent.  I see that these are
photographs of objects that are drawn in that differ from previous photos that
were admitted.”  After apparently viewing the exhibits, the trial court
overruled appellant’s objection and admitted the exhibits.

In this court, appellant argues the trial court
should have excluded the evidence under Texas Rule of Evidence 403, which
provides, “Although relevant, evidence may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.”  Tex. R. Evid. 403.  Specifically, he complains about the
placement of the pickup truck on the satellite photograph, contending its
placement “mislead the jurors to believe that it was not on Appellant’s property
and only within the public street.  Appellant’s position is that the photograph
was altered in such a way as to enhance the detriment to appellant.”[3]  Appellant does
not explain the significance of the precise location of the truck in Exhibit 71
and does not explain why Exhibit 72 was prejudicial.  Assuming, without
deciding, that appellant’s complaint at trial comported with his complaint on
appeal, we conclude the trial court did not abuse its discretion in admitting
the demonstrative evidence.

In Exhibit 71, the passenger’s side of the truck
appears to be immediately adjacent to the grass.  Hix explained to the jury
that Exhibit 71 was not a photograph of the crime scene and the added elements
were only for courtroom display. Exhibit 71 contains a measurement line locating
the truck fifty-six feet, ten inches, from appellant’s porch, a distance
comporting with Hix’s testimony that the distance from the porch to the truck
was “approximately 56, 57 feet.”

The jury saw multiple photographs of the truck taken
shortly after the shooting and showing the truck in relation to appellant’s
house and showing the bullet fragments and shell casings in relation to the
truck.  Hix, who took the photographs and identified them at trial, testified
he did not recall whether the truck was “completely on the street or a little
bit in the grass.”  In short, if the truck was partially on the grass, the
incursion was small.

For the foregoing reasons, we cannot say that the
trial court abused its discretion by concluding that the danger of unfair
prejudice did not greatly outweigh the probative value of the exhibits.  Accordingly,
we overrule appellant’s third issue.

III.  Conclusion

The trial court’s judgment is affirmed.

 

 

 

 

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

Panel consists of Justices
Anderson, Frost, and Seymore.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 

 

 

            









[1]
On direct examination, however, Boehler testified that, after the first shot,
he put his hands in the air and told appellant, “I’m done.”  According to
Boehler, appellant then “proceeded to jump off the porch and chase me around
the truck.”





[2]
Specifically, Hix testified, “Actually [I] took a satellite photograph obtained
from Ellis County 9-1-1 addressing [sic] office here and added these elements
in there just for courtroom display only.  This is not a photograph of the
crime scene.  It is a pictorial to show what we found at the crime scene.”





[3]
This complaint is potentially relevant only to Exhibit 71.