

# NUMBER 13-11-00185-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARTIN OBREGON,                                **Appellant,**

**v.**

THE STATE OF TEXAS,                         **Appellee.**

### On appeal from the 183rd District Court
### of Harris County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Martin Obregon was charged with the murder of Jorge Medrano.[1]   *See*

TEX. PENAL CODE ANN. § 19.02 (West 2011).   Obregon pleaded "not guilty" to the charge.

---

[1] This case is before the Court on transfer from the Fourteenth Court of Appeals in Houston pursuant to an order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

After a jury trial, Obregon was found guilty of the lesser-included offense of manslaughter, a second-degree felony. *See id.* § 19.04 (West 2011). The trial court assessed punishment at fifteen years' confinement in the Texas Department of Criminal Justice—Institutional Division. By five issues which we have renumbered as three, Obregon contends that (1) the evidence was sufficient to prove self-defense; (2) the trial court erred in failing to instruct the jury on the law of self-defense against multiple assailants and in instructing the jury incorrectly on the meaning of "beyond a reasonable doubt"; and (3) during the State's closing argument, the prosecutor misstated the law of self-defense, the trial court erred in sustaining the prosecutor's objection to Obregon's statement on defense burdens, and the prosecutor's arguments and the trial court's comments diminished the presumption of innocence. We affirm.

## I. BACKGROUND

The testimony at trial established that two groups of men exchanged words in front of homes where some of the men lived and others were visiting; Obregon was in one group, and Jorge Medrano and his brother, Artemio Medrano, were in the other.[2] After the men exchanged words, Obregon and the Medrano brothers fought each other in the street. Then someone arrived with a gun, and the Medranos headed to their truck. Obregon and two other defense witnesses testified that before the Medrano brothers ran to the truck, one of them said that they were going to get their guns.

As the Medranos drove away, Obregon, who had grabbed the gun, aimed it at the truck, and fired a single shot. The bullet struck Jorge in the back of his head and,

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

according to the medical examiner's report, caused his death. Obregon fled to Mexico. United States Marshals arrested him six or seven months later.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Obregon contends that the evidence was sufficient to prove self-defense and to entitle him to an acquittal. The State responds that this issue lacks merit because any rational jury could have found against Obregon on the self-defense issue. We agree with the State.

### A. Applicable Law and Standard of Review

On a self-defense claim, the defendant has the burden of production and must bring forth some evidence to support the particular defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defense is raised, the State bears the burden of persuasion to disprove the defense; however, such a burden requires only that the State prove its case beyond a reasonable doubt. *Id.* The State is not required to produce additional evidence rebutting self-defense. *Id.* The issue of self-defense is a fact issue the jury determines, and the jury is free to accept or reject any defensive evidence on the issue. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991) (en banc). When a jury finds the defendant guilty, there is an implicit finding against the defensive theory. *Zuliani*, 97 S.W.3d at 594.

Because the State bears the ultimate burden of persuasion to disprove the defensive theories, we review the sufficiency of the evidence under the *Jackson v. Virginia* standard. *Smith v. State*, 355 S.W.3d 138, 144–45 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (applying the *Jackson v. Virginia* standard to a jury's rejection of a self-defense claim) (citing *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)

(plurality op.) (referring to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))); *Saxton*, 804 S.W.2d at 914 (distinguishing the standard of review with regard to defensive claims in which the State bears the burden of persuasion and affirmative defenses in which the defendant bears the burden of proof). In reviewing a legal sufficiency challenge on the issue of self-defense, a reviewing court views the evidence in the light most favorable to the verdict to see if any rational trier of fact could have found (1) the essential elements of manslaughter beyond a reasonable doubt, and (2) against appellant on the self-defense issue beyond a reasonable doubt. *See Hernandez v. State*, 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Saxton*, 804 S.W.2d at 914).

In our review, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326; *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (en banc). The jury "can choose to believe all, some, or none of the testimony presented by the parties." *Chambers*, 805 S.W.2d at 461. The statements of the defendant and his witnesses do not conclusively prove a claim of self-defense. *See Denman v. State*, 193 S.W. 3d 129, 132–33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (finding that the evidence was sufficient to support a conviction for aggravated assault under the *Jackson v. Virginia* standard despite defendant's claim of self-defense, which was based on the testimony of the defendant and other witnesses who stated that the complainant had assaulted or threatened defendant on prior occasions).

We measure the sufficiency of the evidence against the hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v.*

*State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).   A person commits manslaughter if he "recklessly causes the death of an individual."   TEX. PENAL CODE ANN. § 19.04(a).

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.   The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c) (West 2011).   In short, reckless conduct is the conscious disregard of the risk created by the actor's conduct.   *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007).   The penal code, however, provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force."   TEX. PENAL CODE ANN. § 9.31(a) (West 2011).   A "reasonable belief" is defined as one that would be held by "an ordinary and prudent man in the same circumstances as the actor."   *Id.* § 1.07(a)(42) (West 2011).

**B.     Discussion**

**1.     Jury Found Essential Elements of Manslaughter Beyond a Reasonable Doubt**

Obregon does not specifically challenge the first prong of *Hernandez*, that any rational trier of fact could have found the essential elements of manslaughter beyond a reasonable doubt.   *See* 309 S.W.3d at 665.   Rather, Obregon concedes that he "does not dispute that he fired the weapon that resulted in the death of Jorge."   *See* TEX. PENAL CODE ANN. §§ 6.03(c), 19.04(a); *Williams*, 235 S.W.3d at 751.   And the evidence shows that after the men fought, Obregon took a gun from someone and pointed it at the

5

Medrano brothers as they were running toward their truck. They were driving away when Obregon fired a shot at the truck. The bullet struck and killed Jorge.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Obregon recklessly caused Jorge's death, i.e., that he had a conscious disregard of the risk created by his conduct. *See* TEX. PENAL CODE ANN. §§ 6.03(c), 19.04(a); *Williams*, 235 S.W.3d at 751. The first prong of the *Hernandez* test has been satisfied. *See Hernandez*, 309 S.W.3d at 665; *see also* TEX. R. APP. P. 47.1, 47.4.

### 2. Jury Found Against Obregon on Self-defense Issue Beyond Reasonable Doubt

Obregon does maintain that he shot Jorge in self-defense and that the evidence did not establish the second prong of *Hernandez*, that a rational trier of fact could have found against him on the self-defense issue beyond a reasonable doubt. *See* 309 S.W.3d at 665. Obregon contends that the evidence shows that his action in firing the handgun was the result of the Medrano brothers' attack on him and their threat to retrieve guns. Obregon claims that he acted in self-defense from the apparent danger created by the attack and by the Medranos' alleged threat.

The evidence shows that Obregon and the Medrano brothers, among others, exchanged words about rival gang-related activities, specifically activities between "Tango Blast" and "Houstone." A fistfight followed. The fighting stopped when someone arrived with a gun. Obregon, his girlfriend, and his sister testified that they overheard the Medrano brothers say, "Let's go get the guns," as they began running toward their vehicle. Houston Police Department Officer Sgt. Jeremiah Rubio testified

6

that he was familiar with the Houstones and would take a threat by a Houstone member seriously. Obregon's brother-in-law Andy Flores, who was with Obregon, testified that he was worried about "[the Medrano brothers] coming and messing up my house and messing with my family. You got to take people seriously when people do things, you know." Yet neither Jorge nor his brother had a gun that day, and the fighting had stopped. They were driving away when Obregon fired the shot that hit Jorge in the back of his head and killed him.

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found against Obregon on the self-defense issue beyond a reasonable doubt. *See id.* The jury chose not to believe that Obregon acted in self-defense because of the earlier fight or the threat of retrieving guns. *See Zuliani*, 97 S.W.3d at 594. And the jury may have chosen not to believe Obregon and the defense witnesses' testimony regarding the Medranos saying that they were going to retrieve their guns. *See Chambers*, 805 S.W.2d at 461. The jury could have concluded that Obregon was not justified in shooting Jorge because he could not have reasonably believed that force was immediately necessary to protect himself against the Medranos' use or attempted use of force. *See* TEX. PENAL CODE ANN. § 9.31(a). Based on the other evidence, the jury could have instead reasonably concluded that Obregon's conduct in firing a gun at the Medrano brothers after the fighting had ended and as the brothers were driving away was inconsistent with his defensive claims. *See Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (finding that jury could have reasonably concluded that defendant's conduct in continuing to stab his wife's back as she lay bleeding on floor was inconsistent with his claim of self-defense). The second prong of

7

the *Hernandez* test has been satisfied. *See Hernandez*, 309 S.W.3d at 665.

In sum, the jury rationally could have found that each element of the charged offense was proven beyond a reasonable doubt and rationally could have rejected Obregon's claims of self-defense. *See Jackson*, 443 U.S. at 319; *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914; *Hernandez*, 309 S.W.3d at 665. Accordingly, we hold that the evidence was sufficient to support Obregon's conviction for manslaughter. We overrule Obregon's first issue.

### III.   CHARGE ERROR

By his second issue, Obregon contends that the trial court erred when it failed to instruct the jury on the law of self-defense against multiple assailants. He also asserts charge error because the trial court instructed the jury incorrectly on the meaning of "beyond a reasonable doubt."

### A.   Self-Defense Against Multiple Assailants Instruction

Obregon complains that although the trial court instructed the jury on self-defense, apparent danger, and provoking the difficulty, the instructions were insufficient to advise the jury properly on the law of self-defense against multiple assailants because the application paragraph of the charge referred only to Jorge's actions, rather than the actions of both Jorge and his brother. Obregon appears to be arguing that the trial court erred when it failed to sua sponte provide an instruction on self-defense against multiple assailants because the issue was raised by the evidence.

In analyzing a jury-charge issue, it must first be determined if error occurred and, if so, whether harm was suffered. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Defensive instructions must be requested by the defense in order for the

8

instruction to be considered applicable to the case. *Bennett v. State*, 236 S.W.3d 241, 243 & n.9 (Tex. Crim. App. 2007). A trial court has no duty to sua sponte instruct the jury on defensive issues, even when those issues are raised by the evidence. *Vega v. State*, 394 S.W.2d 514, 519 (Tex. Crim. App. 2013) (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (en banc)); *Jackson v. State*, 288 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). So generally no error exists in the charge when a defensive issue was not requested or otherwise brought to the court's attention. *Posey*, 966 S.W.2d at 61–62.

Obregon relies on *Taylor v. State* as his supporting authority. *See* 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). In *Taylor,* the court of criminal appeals set out the following regarding the trial court's sua sponte duty to instruct the jury:

> Code of Criminal Procedure Article 36.14 details the requirements and procedures for the delivery of the court's charge to the jury. TEX. CODE CRIM. PROC. ANN. art. 36.14. It states, "the judge shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." *Id.* Article 36.14 also provides that, before the charge is read to the jury, "the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections." *Id.* However, the judge's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge; this may require the judge to sua sponte provide the jury with the law applicable to the case, under Article 36.14. So, even in the absence of action on the part of Appellant's defense counsel, if an 8.07(b) instruction were the law applicable to this case, the trial judge was required, under Article 36.14, to include it in the jury charges. We must assess whether the jury charges set forth the law applicable to the case, and specifically, whether an 8.07(b) instruction belonged in the jury charges. [*See* TEX. PENAL CODE ANN. § 8.07(b) (West 2011) (providing "a person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age," with exceptions).].

*Taylor*, 332 S.W.3d at 486–87. But the *Taylor* Court also reminded the reader of the following: "We have previously held that Article 36.14 imposes no duty on trial courts to

sua sponte instruct the jury on unrequested defensive issues. An unrequested defensive issue is not the law applicable to the case." *Id.* at 487 (citing *Posey*, 966 S.W.2d at 62). The law set out in *Posey* and noted in *Taylor* is the law that controls our analysis in this case. *See Posey*, 966 S.W.2d at 61–62; *see also Taylor*, 332 S.W.3d at 486–87.

Obregon stated that he had no objection to the trial court's jury charge. There is nothing in the record to indicate that he proffered a jury charge containing an instruction for the defensive issue of self-defense against multiple assailants. Because this instruction is a defensive issue and because Obregon failed to request its submission, the trial court had no sua sponte duty to place it in the charge. *See Posey*, 966 S.W.2d at 61–62; *see also Taylor*, 332 S.W.3d at 486–87. "A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint." *Vega*, 394 S.W.3d at 519 (citing *Posey*, 966 S.W.2d at 61). The trial court therefore did not err in failing to instruct the jury on self-defense against multiple assailants. *See Ngo*, 175 S.W.3d at 743.

## B. Reasonable Doubt Instruction

Obregon also asserts by his second issue that the "trial court erred in its instructions to the jury on the law of 'proof beyond a reasonable doubt.'" To the extent Obregon is complaining about a jury charge definition of "beyond a reasonable doubt," we find no such definition in the jury charge. The jury charge instructed the jury that they were required to find all of the elements beyond reasonable doubt; however, the instructions did not define "beyond a reasonable doubt." And the trial court did not err in

10

this regard.   *See Ngo*, 175 S.W.3d at 743.

If Obregon is complaining about the trial court's comments regarding the definition of "beyond a reasonable doubt" that it made to the jury during voir dire, he has failed to preserve this issue for our review.   Obregon made no objection to the court's statements. *See Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (holding that Fuentes waived his complaint about the trial court's explanation of the reasonable-doubt standard during voir dire by failing to renew his objection when the trial court repeated its explanation); *see also* TEX. R. APP. P. 33.1(a).   Instead, Obregon made substantially similar comments during his own voir dire of the jury panel.   We conclude that Obregon waived error to the extent his arguments are directed at the comments made by the trial court during voir dire.   *See Fuentes*, 991 S.W.2d at 273; *see also* TEX. R. APP. P. 33.1(a).

We overrule Obregon's second issue.

### IV.   CLOSING ARGUMENT

In his third issue, Obregon claims that he was deprived of a fair trial when the prosecutor allegedly misstated the law of self-defense during closing argument. Obregon also argues that the trial court erred in sustaining the prosecutor's objection to a statement made by defense counsel during his final argument regarding self-defense and the State's burden.[3]   Finally, Obregon contends that the prosecutor and the trial court diminished the presumption of innocence by arguments and comments made during final

---

[3] The defense attempted to argue during final summation that the State had the burden of proving the lack of self-defense.   The trial court did not sustain the State's objection, as Obregon claims.   Instead, it instructed Obregon's counsel to "[r]ephrase," and "[s]tay on the record, please."   The trial court also instructed the jury that it would give the jury the law in the charge and that was the law to follow in this case.

11

argument.[4]

The general rule is that a party must request the desired relief to preserve a complaint on appeal. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998) (en banc). To preserve error for our review on these contentions, Obregon was required to show that he made a timely objection to the trial court, stated the specific grounds for the objection, and obtained a ruling. *See* TEX. R. APP. P. 33.1(a); *Jacoby v. State*, 227 S.W.3d 128, 130 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Even constitutional errors may be waived by the failure to object at trial. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (en banc); *Trevino v. State*, 174 S.W.3d 925, 927 (Tex. App.—Corpus Christi 2005, pet. ref'd) (citing *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986)). Because Obregon failed to object specifically to any of the complained-of statements made during closing argument, he has waived error for our review. We overrule Obregon's third issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 5th
day of September, 2013.

---

[4] Obregon also asserts that the trial court's comments during voir dire diminished the presumption of innocence. We discussed Obregon's contentions regarding voir dire in his second issue and need not address them further. *See id.* 47.1.

12