Dan HERNANDEZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–08–00787–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 16, 2010.

Keisha L. Smith, Houston, for appellant.

David Christopher Newell, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and SULLIVAN.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Dan Hernandez, Jr., was convicted of murder and sentenced to life imprisonment. In two issues, appellant contends the evidence is legally and factually insufficient to support the verdict and the trial court erred by submitting a certain jury instruction. We affirm.

### I. BACKGROUND

According to the State's evidence, on April 29, 2005, appellant, Antonio Lopez, and Artemio Lopez were at the shop owned by Gilberto Garcia, their employer. Gilberto instructed these men to drive to Omar Garza's apartment to retrieve a big-screen television. Gilberto also instructed appellant to speak with Omar regarding property he allegedly stole from Gilberto. Antonio testified that Gilberto told appellant "to talk to [Omar] nicely and not to harm him, just talk to him nicely and tell him to return the gold and to return the weapon." Appellant, Antonio, and Artemio took one of Gilberto's trucks to Omar's apartment. While enroute, appellant expressed he "was going to ask [Omar] to return the guns and the jewelry ... he stole from Gilberto." Appellant further stated, "Don't worry about it. I'm just going to talk to this guy. Let me do the talking."

When appellant, Antonio, and Artemio arrived at Omar's apartment, Noel Lopez and a man named Luis were already there and helped move the television into Gilberto's truck. According to Noel, when he and Luis arrived, Omar allowed them to enter his apartment and then left.

After the television was loaded, Omar returned in his SUV. He approached the men and "saluted everybody." Appellant met Omar and began talking to him. Noel testified that appellant put his hand on Omar in a friendly manner. Appellant told Omar "he knew that he got the guns and the gold." Omar then pushed appellant and pulled out a small, black automatic handgun. Antonio tried to take the gun, but Omar was too quick and cocked the gun. Antonio ran to his truck and heard a gunshot. After opening the door to the truck, he heard a second gunshot. Artemio and appellant entered the truck, and the men drove away. Following the first gunshot, Noel and Luis drove away.

Once in the truck, appellant became upset and "freaked out." He stated, "I had to [shoot] him because he pulled out a gun," and "He made me do it. I mean, it could have been anybody else." Later that night, the men met with Gilberto and relayed what had occurred.

The police were contacted after a family discovered Omar's body lying in the parking lot. Officers found a Glock 9-millimeter handgun near Omar's body. The Glock was loaded with Remington 9-millimeter ammunition. Two casings from Federal 9-millimeter bullets were found nearby. According to Homicide Sergeant Craig Clopton, the lead investigator, the casings did not come from the Glock. The medical examiner testified that Omar had a gunshot wound to the upper chest and a fatal gunshot wound to the head. He explained that the head wound was caused by a firearm held from "2 to 3 inches" to "2 to 3 feet" from Omar, and the bullet path through Omar's head was back to front, left to right. The chest wound was a "contact gunshot wound," meaning the muzzle of the gun was held against Omar's skin when the gun was fired. The medical examiner was unable to determine what type of gun was used.

After some difficulty locating appellant, he was arrested and charged with murder. At trial, the State introduced several recorded phone conversations between appellant and his brother and other unidentified persons in which appellant asked the other person to have "G" or "Gilbert" (apparently referring to Gilberto) swear in an affidavit that he neither knows appellant nor sent him to Omar's apartment complex. During these conversations, appellant also explained that to prevail on self-defense, he would have to be charged with possession of a "pistol." Following trial, the jury convicted appellant.

## II. JURY CHARGE ERROR

■ We begin with appellant's second issue, in which he contends the trial court erred in submitting an instruction to the jury pursuant to subsection 9.31(b)(5) of the Penal Code. *See* Tex. Penal Code Ann. § 9.31(b)(5) (Vernon Supp.2009). When reviewing charge errors, we first determine whether there was error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App.2009). If error existed, we then determine whether harm occurred. *See id.*

The relevant portion of the charge was submitted as follows:

[T]he use of force by a defendant against another is not justified if the defendant sought an explanation from or discussion with the other person concerning the defendant's differences with the other person while the defendant was carrying a weapon in violation of the law.

A person commits an offense if he intentionally, knowingly, or recklessly, carries on or about his person a handgun.

"Handgun" means any firearm that is designed, made, or adapted to be fired with one hand.

 A charge limiting a defendant's right to self-defense is properly given when (1) self-defense is an issue, (2) there are facts in evidence showing that the defendant sought an explanation from or discussion with the victim concerning the defendant's differences with the victim, and (3) the defendant was unlawfully carrying a weapon. *See* Tex. Penal Code Ann. § 9.31(b)(5)(A); *see also Lee v. State,* 259 S.W.3d 785, 789 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd). When a defensive issue is raised by the evidence and a charge on the issue is properly requested, the issue must be submitted to the jury. *Muniz v. State,* 851 S.W.2d 238, 254 (Tex. Crim.App.1993).

 There was evidence Gilberto instructed appellant to confront Omar about items he had allegedly stolen from Gilberto. Appellant approached Omar and told him "[I know] that [you] got the guns and the gold." Appellant argues this evidence does not support a subsection 9.31(b)(5) instruction because he sought an explanation from Omar concerning differences between Gilberto and Omar, *not* between appellant and Omar.

The term "differences" is not defined in the statute.[1] Under the canons of statuto-ry construction, we are to construe a statute according to its plain language. *Edwards v. State,* 273 S.W.3d 919, 921 (Tex. App.-Houston [14th Dist.] 2009, no pet.). In determining the plain meaning of the language of a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005). The plain meaning of "differences" is a "disagreement of opinion," or "an instance of disagreement or a point upon which there is disagreement." Webster's Third Int'l Dictionary 629 (1993) (third definition of "difference").

We have found one case in which the State utilized subsection 9.31(b)(5) to limit a self-defense theory where a person sought out the victim to discuss the victim's differences with a third person.[2] In *Davis v. State,* the defendant recruited three assailants to retrieve money from the victim that had been stolen from the defendant. 276 S.W.3d 491, 494 (Tex. App.-Waco 2008, pet. ref'd). The defendant drove the assailants to the victim's home and supplied them with handguns. *Id.* The assailants broke into the victim's home and demanded the money. *Id.* The victim began shooting, and one of the assailants returned gunfire killing the victim. *Id.* At trial, the defendant was denied a

---

1. We acknowledge that without definition, "differences" between the victim and the defendant claiming self-defense is subject to overly-broad application; it can refer to a disagreement as serious as murder-for-hire gone badly or as trivial as which NFL team is the best.

2. The State refers to an unpublished opinion in which the Dallas Court of Appeals held that a defendant sought to discuss his differences with the victim because the victim had harassed the defendant's wife and she told the defendant to "do something." *Casares v. State,* No. 05–02–01394, 2003 WL 22332374, at *3 (Tex.App.-Dallas Oct. 14, 2003) (mem. op., not designated for publication), *aff'd* 2005 WL 77049 (Tex.Crim.App.2004) (mem. op., not designated for publication). However, in affirming the Dallas Court of Appeals's judgment, the Court of Criminal Appeals explained that the evidence shows that "before this incident, there had been a degree of antagonism between the [defendant and the victim]." *Casares,* 2005 WL 77049, at *3. Thus, *Casares* is distinguishable from the present case, where the only evidence relative to appellant's and Omar's prior relationship was that they did not know each other.

self-defense instruction. *Id.* at 498. The court held, "[A]lthough [the defendant] argues that entry into the trailer was for purposes other than a discussion of differences, [*i.e.,* they were supposed to retrieve the stolen money,] the evidence establishes as a matter of law that the assailants sought interaction with [the victim] over the stolen money while the assailants were illegally carrying handguns." *Id.* Therefore, the defendant was not entitled to a self-defense instruction. *Id.* at 499; *see also Williams v. State,* 35 S.W.3d 783, 786 (Tex.App.-Beaumont 2001, pet. ref'd) ("[I]f the evidence is undisputed that force was not justified as a matter of law because of section 9.31(b)(5), then a self-defense instruction is barred.").[3]

Omar allegedly possessed weapons and jewelry belonging to Gilberto; thus, there was disagreement regarding right to possession. Appellant sought to discuss this disagreement with Omar. Hence, we reject appellant's argument that he had no "differences" with Omar.

Appellant also argues there was no evidence that he was carrying a weapon because the record supported the State's contention that the gun found at the scene belonged to Omar and, while some evidence indicates two guns were at the scene, no witness testified appellant possessed a weapon. However, appellant's admission that he shot Omar, coupled with the discovery of bullet casings that did not come from the gun found at the scene, supported an inference appellant was carrying and used a gun during his confrontation with Omar.

In sum, the trial court did not err by submitting a subsection 9.31(b)(5) instruction. Accordingly, we overrule appellant's second issue.

---

**3.** In the present case, the State did not contend at the charge conference that the evidence conclusively established that deadly

## III. LEGAL AND FACTUAL SUFFICIENCY

We next consider appellant's first issue in which he contends the evidence is legally and factually insufficient to support the jury's finding that appellant acted with the requisite intent to commit murder and rejection of his self-defense claim.

 The initial burden to produce evidence supporting self-defense rests with the defendant. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003). Once evidence is produced, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *Id.* This burden of persuasion is not one that requires the production of evidence, but requires only that the State prove its case beyond a reasonable doubt. *Id.* When a jury finds the defendant guilty, there is an implicit finding against self-defense. *Id.*

 In a legal-sufficiency review, we consider all of the evidence in the light most favorable to the verdict and decide whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Young v. State,* 14 S.W.3d 748, 753 (Tex.Crim.App. 2000). When reviewing a legal-sufficiency challenge on the issue of self-defense, a reviewing court views the evidence in the light most favorable to the verdict to see if any rational trier of fact could have found (1) the essential elements of murder beyond a reasonable doubt, and (2) against appellant on the self-defense issue beyond a reasonable doubt. *See Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991).

 In examining a factual-sufficiency challenge, we review all the evidence in a neutral light and set aside the verdict

force was not justified because of subsection 9.31(b)(5).

only if (1) the evidence is so weak that the verdict "seems clearly wrong or manifestly unjust" or (2) the verdict is "against the great weight and preponderance of the evidence." *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App.2006) (quoting *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006)). Although we may substitute our judgment for the jury's when considering credibility and weight determinations, we may do so only to a very limited degree and must still afford due deference to the jury's determinations. *See id.* (quoting *Watson*, 204 S.W.3d at 415, 417). In a factual-sufficiency review of the rejection of a self-defense claim, we view "all of the evidence in a neutral light and [ask] whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence." *Zuliani*, 97 S.W.3d at 595.

 Several witnesses testified that, moments after the shooting, appellant admitted he shot Omar. Further, Omar sustained a contact gunshot wound to the chest and was shot in the back of the head at close range. We conclude this evidence supported a finding that appellant intentionally or knowingly caused the death of Omar or intended to cause serious bodily injury and intentionally committed an act clearly dangerous to human life that caused the death of Omar. *See* Tex. Penal Code Ann. § 19.02(b)(1)-(2) (Vernon 2003) (describing the elements of murder). Hence, this case turns on whether there is legally and factually sufficient evidence supporting the jury's rejection of appellant's self-defense theory.

As discussed *supra*, the jury was instructed that self-defense is not justified if (1) appellant sought an explanation from or discussion with Omar concerning his differences with Omar (2) while illegally carrying a handgun. *See id.* § 9.31(b)(5)(A). It is undisputed that appellant approached Omar and broached the subject of Gilberto's stolen property. We previously explained why this evidence supported the first prong of subsection 9.31(b)(5). Thus, we must determine whether the evidence supports the contention that appellant was illegally carrying a handgun.

The State presented no testimony referring to the gun used by appellant as a "handgun." However, such fact may be determined from circumstantial evidence. *See Pizzini v. State*, 981 S.W.2d 367, 368–69 (Tex.App.-San Antonio 1998, pet. ref'd). Two casings from Federal 9–millimeter bullets were found near Omar's body; these casings did not match the bullets found in the 9–millimeter Glock handgun. This evidence supported an inference that two firearms were present during the altercation. Appellant admitted to others that he shot Omar, and testimony that Omar drew *a gun*, as opposed to two guns, supports an inference that appellant used his own gun. Eyewitnesses testified they did not see appellant with a gun, supporting an inference that the firearm carried by appellant was small enough to be concealed on his person. The medical examiner testified that he could not determine what type of gun fired the bullets that struck Omar. However, he testified that the contact gunshot wound to Omar's chest was "consistent … with a pistol actually being held to [Omar's] chest and then fired." Finally, appellant was recorded on the telephone stating, "If I take it to trial, … I'm gonna beat it on a self-defense case, right? … If I beat it on a self-defense, I still, alright, I still gotta be charged with a pistol. You know. And then they can charge me aggravated [with a pistol], because I shot somebody."

Based on this evidence, the jury could have reasonably inferred that appellant was carrying and used a handgun against Omar.[4] We further note that no evidence suggested appellant used a non-handgun firearm.

After viewing all the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant committed the essential elements of murder and was not justified in using deadly force. Viewing the evidence in a neutral light, we conclude that the evidence taken alone is not too weak to support these findings, and proof of guilt is not against the great weight and preponderance of the evidence. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's implied finding against appellant's self-defense theory and that appellant acted with the requisite intent. We overrule appellant's first issue.

We affirm the judgment of the trial court.

---

4. Evidence appellant shot Omar with a gun that was concealed on his person supported an inference that the gun was small, but a finding that the gun was a handgun based on nothing more would have been speculative. *See Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex.Crim.App.2007) (explaining that mere speculation cannot support a finding beyond a reasonable doubt). Additionally, the medical examiner's statement that the contact gunshot wound was consistent with a pistol having been held against Omar's chest did not rule out other types of guns and thus did not alone support a handgun finding. However, these circumstances taken together with appellant's acknowledgment that a claim of self-defense entailed his being charged with possession of a *pistol* moved the jury's handgun finding beyond conjecture into the realm of reasonable inference. *See Pizzini*, 981 S.W.2d at 369 ("[I]f the State proved the use of a pistol, the jury could reasonably infer the use of a handgun.").