**Affirmed and Memorandum Opinion filed April 17, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00116-CR

---

### WALTER HINTON, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 262nd District Court
### Harris County, Texas
### Trial Court Cause No. 1316867

---

## MEMORANDUM OPINION

Appellant Walter Hinton challenges his murder conviction in three issues. In his first issue, appellant claims that the evidence was insufficient for the jury to (1) convict him of murder and (2) reject his self-defense claim. In his second issue, appellant claims that the trial court committed error when it submitted an instruction on provocation to the jury and that the jury-instruction error caused sufficient harm to warrant a reversal. In his third issue, appellant claims that the

trial court abused its discretion when it excluded evidence of a State witness's remote prior conviction for attempted murder. Because we find against appellant on each issue, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On the evening of Friday August 12, 2011, appellant attended a birthday party with his girlfriend at an apartment complex on Truxillo Street in south Houston, Harris County, Texas. Appellant received a phone call while he was at the party and answered it outside. Appellant returned to the apartment complaining that a dog had bitten him on the leg. Appellant was angry and asked who owned the dog.

The complainant, Robert Jones, who lived and worked at the apartment complex, owned the dog. On that evening, he was sitting outside his office in the company of fellow residents. After learning that the dog belonged to the complainant, appellant confronted him and gave him three options: (1) Appellant would call the police; (2) Appellant would shoot the dog; or (3) Appellant would take all the money in the complainant's pocket. The complainant replied that appellant could shoot the dog.

Appellant contacted his wife and asked her to bring him his gun, a .380 semiautomatic handgun. Appellant left the apartment complex and met his wife at a gas station where she gave him the gun. Appellant returned to the apartment complex with the gun and found the complainant in the same general area of the apartment complex. He again complained about the dog and was largely ignored. To make his point, appellant began firing the pistol his wife had brought him. Robert Floyd, an acquaintance of the complainant, was shot in the ankle. Cheyenne Johnson, the complainant's stepson, was shot in the stomach. The complainant was shot five times: twice in the chest, once in the hand, and twice in the thigh. He

2

ultimately died from his wounds.

Appellant was indicted for murder. The indictment alleged two prior felony convictions. A jury convicted appellant of murder, found the prior felony convictions "true," and sentenced him to life in prison. He timely appealed.

## DISCUSSION

## I.    Legal Sufficiency

In his first issue, appellant contends that the evidence was insufficient for the jury to both convict him of murder and reject his self-defense claim. We disagree on both counts.

### A.    Standard of Review

We apply a legal sufficiency standard of review to determine whether the evidence is sufficient to support a conviction. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must view the evidence in the light most favorable to the verdict and affirm if any rational juror could have found the essential elements of the offense beyond a reasonable doubt and could have implicitly rejected the defendant's self-defense claim beyond a reasonable doubt. *See* Tex. Penal Code Ann. §2.03(d) (West 2011); *Gross v. State*, 380 S.W.3d 181, 185 (Tex. Crim. App. 2012); *Temple*, 390 S.W.3d at 360; *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Hull v. State*, 871 S.W.2d 786, 789 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

Viewing the evidence in the light most favorable to the verdict means that the jury is the sole judge of witness credibility and the weight to be attached to witness testimony. *Temple*, 390 S.W.3d at 360. The jury can draw reasonable inferences from the facts as long as each inference is supported by the evidence, and if the record supports conflicting inferences, we presume that the jury resolved

3

the conflicts in favor of the verdict. *Id.* If the record contains no probative evidence of an element of the offense or merely a "modicum" of probative evidence, then the evidence is insufficient to uphold the conviction. *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

**B.    The evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that appellant caused the complainant's death.**

A person commits murder if he intentionally or knowingly causes the death of an individual or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1), (b)(2) (West 2011). According to the assistant medical examiner, the cause of death in this case was multiple gunshot wounds. The assistant medical examiner testified, however, that only one of the complainant's five gunshot wounds was "immediately fatal" because it perforated the complainant's aorta. Appellant specifically attacks the causation element of his murder conviction, arguing that the evidence was insufficient to prove beyond a reasonable doubt that he inflicted the wound that was "immediately fatal." We disagree.

The jury could have rationally concluded that appellant shot the complainant in the back, inflicting the fatal wound. Floyd testified that appellant was standing behind the complaint when appellant opened fire. Washington testified that appellant shot the complainant in the chest. According to the autopsy report and the assistant medical examiner's testimony, the bullet that caused the fatal chest wound entered the complainant's body from the rear. It perforated his back muscles, posterior chest wall, the upper lobe of his right lung, the arch of his aorta, and his left chest wall. The bullet ultimately exited the front of the complainant's chest.

4

The jury could have rationally disregarded appellant's theory that another firearm inflicted the fatal wound. Appellant used a .380 caliber handgun in the attack, which was not recovered. Two other guns were found at the scene and introduced into evidence: a Smith and Wesson .38 Special and a Glock .9mm. Witnesses testified that after the first confrontation between the complainant and appellant, the complainant retrieved a rifle from his apartment. Thus, aside from appellant's .380 handgun, the evidence indicates that only three guns could have inflicted the fatal wound and caused the complainant's death: (1) the rifle, (2) the Smith and Wesson .38 Special, and (3) the Glock .9mm.

The jury could have first determined that the rifle did not inflict the fatal wound because there is no evidence that a rifle was used during the incident. Next, the jury could have determined that the .38 Special did not inflict the fatal wound. Investigators at the scene found the .38 Special in the complainant's pants and recovered six unfired rounds from it. The State's ballistics expert testified that the .38 Special did not function properly when she initially tried to test fire it. The complainant was right-handed, and no gunshot residue was found on the complainant's right hand. When describing the incident to Brandon Bridges, appellant's cellmate at the Harris County jail, appellant said he was unaware that anyone else had a gun. The jury could have rationally inferred from the evidence that the .38 Special was not used during the incident.

Finally, the jury could have determined that the Glock .9mm did not inflict the fatal wound. Appellant told Bridges that he fled the apartment complex immediately after the shooting. Sherry Johnson, the complainant's wife, testified that Terrell Robinson, the complainant's son, started shooting the Glock .9mm after appellant had already fled the scene. Ms. Johnson testified that Robinson was shooting the Glock .9mm in the direction of the apartment where appellant had

5

attended the party. After shooting at the apartment, Robinson asked Ms. Johnson about the complainant's location. Ms. Johnson later found Robinson holding the complainant, who was bleeding from his chest and mouth. The police found the Glock .9mm under the complainant's body. Multiple witnesses testified that Robinson was not present when appellant began firing. From this evidence, the jury could have inferred that Robinson was not shooting at the complainant.

Appellant contends that the fatal wound must have been caused by the Glock .9mm because the police recovered ten .9mm bullet casings but only two .380 bullet casings. Appellant's argument lacks merit because it proceeds from the false premise that the number of recovered bullet casings correlates to the number of shots fired by a particular gun. The evidence indicates that appellant fired his gun at least four times: (1) Floyd testified that appellant shot him in the ankle; (2) Johnson testified that appellant shot him in the stomach; (3) Washington testified that appellant shot the complainant in the chest; and (4) the assistant medical examiner recovered a .380 bullet from the complainant's leg. Applying appellant's logic, the police should have recovered at least four bullet casings. Thus, the number of recovered bullet casings does not necessarily correlate to the number of shots fired by a particular gun, and the jury could have rationally discounted the probative value of the bullet-casing evidence.

After a thorough review of the record and giving proper deference to the jury's verdict, we conclude that the evidence is sufficient to support the jury's finding of guilt.

### C.    The evidence was legally sufficient for a rational jury to implicitly reject appellant's claim of self-defense.

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the

actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a) (West 2011). A person's use of deadly force is justified if (1) he would be justified in using force under section 9.31(a) and (2) he reasonably believes that deadly force is immediately necessary to protect against another's use or attempted use of deadly force or to prevent another's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id.* § 9.32(a) (West 2011). Deadly force means force that is intended or known by the actor to cause or is capable of causing death or serious bodily injury. *Id.* § 9.01(3) (West 2011). The use of force against another is not justified, however, if the actor "sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon in violation of [Penal Code] Section 46.02." *Id.* § 9.31(b)(5). Section 46.02 makes it illegal for a person to intentionally, knowingly, or recklessly carry a handgun if the person is not on his own premises or premises under the person's control or inside of or directly en route to a motor vehicle or watercraft that is owned by the person or under the person's control. *Id.* § 46.02(a) (West Supp. 2013). "Differences" means a "'disagreement of opinion,' or 'an instance of disagreement or a point upon which there is disagreement.'" *Hernandez v. State*, 309 S.W.3d 661, 664 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (quoting *Webster's Third Int'l Dictionary* 629 (1993)).

Appellant contends that a rational jury could not have implicitly found against him beyond a reasonable doubt on his claim of self-defense for three reasons: (1) he was confronted with four or five potential assailants, some of whom were armed; (2) he intended to shoot the dog, not the complainant; and (3) he only fired his gun after the complainant reached for his own gun. The State responds that because appellant's actions were not justified as a matter of law under Texas

Penal Code section 9.31(b)(5), the jury correctly rejected his self-defense claim. We conclude that the jury could have implicitly found against appellant's self-defense on section 9.31(b)(5) and 9.32(a) grounds.

The jury was instructed on both the law of self-defense and on the section 9.31(b)(5) limitation on self-defense. The jury could have implicitly rejected appellant's self-defense claim by concluding that the requirements of section 9.31(b)(5) were met. The evidence shows that the victim and appellant had a difference of opinion regarding the dog bite. They disagreed about whether appellant had been bitten and about the appropriate remedy for appellant's alleged injury. Appellant acquired a handgun from his wife and brought it to the apartment complex. Appellant was not on his own premises nor was the apartment complex where the shooting occurred under appellant's control. Appellant was not en route to his vehicle while he carried the weapon; to the contrary, he carried the weapon from his vehicle to the scene of the crime. Appellant did not have a concealed handgun license.

The jury could have also implicitly rejected appellant's self-defense claim without resorting to section 9.31(b)(5). Although appellant contends that he feared for his life when he was confronted by the complainant and his group of friends, that he did not intend to shoot the complainant, and that he only shot the complainant after seeing the complainant's gun, the evidence contradicts appellant's portrayal of the facts. Appellant was not confronted by multiple assailants. He confronted a group of acquaintances who were socializing outside and started shooting at them when the complainant would not acquiesce to his demands. While testimony revealed that the complainant armed himself during appellant's absence from the apartment complex, several witnesses agreed that appellant began shooting first. Prior to the shooting, appellant told his girlfriend

8

that he planned to knock the complainant's "old ass" down. Appellant told Bridges that he did not see anyone else with a gun and that he shot the complainant to "make a point." Although testimony from appellant's wife indicated that appellant saw the complainant with a gun, the jury, as the sole judge of credibility, was free to disregard the wife's testimony, which conflicted with the testimony of other witnesses. *See Saxton*, 804 S.W.2d at 914; *Hull*, 871 S.W.2d at 789. The jury could have inferred from appellant's behavior that he was the aggressor and that the attack was not instigated by the complainant or the other witnesses who were present during the shooting.

After reviewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found beyond a reasonable doubt that appellant's use of force was not justified. Having already concluded that sufficient evidence exists to support a finding that appellant caused the complainant's death, we overrule appellant's first issue.

## II. Jury Instructions on Provocation and Self-Defense Limitations

In his second issue, appellant contends that the trial court erred when it submitted to the jury an instruction on provocation. The trial court submitted two jury instructions based on the law governing the unjustified use of force. The first instruction pertained to the law of provocation as codified in Texas Penal Code section 9.31(b)(4), and the second instruction pertained to the limitation on a self-defense claim resulting from the defendant's discussion of differences coupled with illegally carrying a weapon, as codified in section 9.31(b)(5). At trial, appellant objected to the provocation instruction but cited and argued against the section 9.31(b)(5) instruction. On appeal, appellant objects to the section 9.31(b)(4) instruction. Despite this inconsistency in appellant's arguments, we assume, without deciding, that appellant preserved error and address the propriety

of both instructions. We conclude that the trial court did not err when it submitted both the 9.31(b)(4) and the 9.31(b)(5) instructions.

## A. Standard of review

When reviewing jury-charge errors, we first determine whether error existed in the charge. *Hernandez*, 309 S.W.3d at 663. If we find error in the charge, we then apply the harm analysis prescribed by the Court of Criminal Appeals in *Almanza v. State* to determine whether harm occurred. 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *see Hernandez*, 309 S.W.3d at 663. When a trial court submits section 9.31(b)(4) or 9.31(b)(5) instructions, we review the evidence in the light most favorable to giving the instruction. *See Smith v. State*, 965 S.W.2d 509, 514 (Tex. Crim. App. 1998); *Fink v. State*, 97 S.W.3d 739, 743 (Tex. App.—Austin 2003, pet. ref'd). The trial court has not erred if we determine that a rational jury could have found each element of the respective instruction beyond a reasonable doubt. *See Smith*, 965 S.W.2d at 514; *Lee v. State*, 259 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Fink*, 97 S.W.3d at 743–44.

## B. The trial court did not err when it submitted the section 9.31(b)(4) jury instruction on provocation.

Appellant argues that the trial court erred in submitting the section 9.31(b)(4) instruction because the evidence was insufficient to meet the three-part standard adopted by the Court of Criminal Appeals in *Smith*. The charge at issue follows the language of Penal Code section 9.31(b)(4) and states, in pertinent part:

> [T]he use of force by a defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force, unless:
>
> (a) the defendant abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(b) the other person nevertheless, continues or attempts to use unlawful force against the defendant.

The trial court did not err when it submitted the section 9.31(b)(4) instruction.

If the defendant provokes another person to attack so that the defendant has a pretext for killing under the guise of self-defense, the defendant loses his right of self-defense. *Smith*, 965 S.W.2d at 512. A charge on provocation is proper when the evidence is sufficient to show that (1) the defendant did some act or used some words which provoked the attack on him, (2) the act or words were reasonably calculated to provoke the attack, and (3) the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Id.* at 513. We address each element in turn.

First, the evidence is sufficient to show that appellant committed acts of provocation. Appellant initially confronted the complainant and threatened to shoot the complainant's dog. After leaving the apartment complex and acquiring a firearm, appellant confronted the complainant again and threatened to shoot the dog. When the complainant refused to give appellant money, appellant shot Floyd in the ankle and fatally shot the complainant. The jury could have found that appellant's carrying a loaded gun to confront the complainant, arguing with the complainant, and shooting Floyd were all acts of provocation.

Second, appellant's acts were reasonably calculated to provoke an attack by the complainant. This element is satisfied if the jury concluded that appellant's acts or words—taken alone or considered in conjunction with other circumstances surrounding the difficulty—were reasonably capable of causing an attack or had a reasonable tendency to cause an attack. *See id.* at 517. Appellant confronted the complainant twice. During the first confrontation, appellant demanded payment in lieu of shooting the dog, and the complainant told appellant to shoot the dog. At

11

this point, appellant left the apartment complex to obtain his gun. During appellant's absence, the complainant armed himself with a rifle and a revolver. This evidence supports a conclusion that continued exchanges between appellant and the complainant were likely to have a volatile effect on the complainant to the point that the complainant might have attacked appellant if appellant returned to shoot the dog. *See id.* Appellant returned with a gun. He reinitiated the confrontation with the complainant and ultimately shot three people, including the complainant. The jury could have found that the appellant's acts of provocation had a reasonable tendency to cause an attack by the complainant. *See id.* at 518.

Third, appellant acted with the intent of having a pretext for killing the complainant. Intent is a fact question to be determined from all the circumstances. *Id.* The acts of provocation alone can carry the inference of intent. *Id.* The defendant's actions during or after the provocation can illuminate his intent. *Id.* The defendant's prior acts can also give character to what the defendant said or did at the time of the homicide, which can aid in both explaining the defendant's words or acts and determining the defendant's intent. *Id.* (citing *Flewellen v. State*, 204 S.W. 657, 665 (Tex. Crim. App. 1917) (Davidson, J. concurring)). Appellant's girlfriend testified that appellant was agitated after the complainant refused his initial demands for remuneration. Appellant returned to the apartment with a loaded gun and must have known that the complainant would continue to refuse his demands. Appellant said that he planned to knock the complainant down. Appellant then shot the complainant and two other people. After the incident, appellant told his cellmate that he "had a shot at an easy case" since the police discovered guns on the scene that belonged to the victim. Taken as a whole, the jury could have inferred from this evidence that appellant returned to the apartment and reinitiated the confrontation in order to provoke an attack as a pretext for

12

killing the complainant.

Viewing the evidence in the light most favorable to giving the instruction, we conclude that a rational jury could have found every element of provocation beyond a reasonable doubt. The trial court did not err in submitting the section 9.31(b)(4) instruction.

**C.**  **The trial court did not err when it submitted the section 9.31(b)(5) jury instruction on unjustified use of force resulting from a discussion of differences coupled with illegally carrying a weapon.**

Appellant argued at trial that submitting the section 9.31(b)(5) instruction was error because the evidence showed that appellant and the complainant were not arguing; they were merely "sitting down talking." Appellant also argued, without explanation, that the judge should strike the portion of the jury charge concerned with unlawfully carrying a weapon. The instruction submitted by the trial court follows the text of section 9.31(b)(5) and states, in pertinent part:

> [T]he use of force by a defendant against another is not justified if the defendant sought an explanation from or discussion with the other person concerning the defendant's differences with the other person while the defendant was carrying a weapon in violation of the law.

> A person commits the offense of unlawful carrying of a weapon if the person intentionally or knowingly carries on or about his or her person a handgun if the person is not on the person's own premises or premises under the person's control.

The trial court did not err when it submitted the section 9.31(b)(5) instruction.

A section 9.31(b)(5) charge is proper when (1) self-defense is an issue; (2) facts in evidence show that the defendant sought an explanation from or discussion with the victim concerning their differences; and (3) the defendant was unlawfully carrying a weapon. *Hernandez*, 309 S.W.3d at 664; *Lee*, 259 S.W.3d at 789. "Differences" means a "'disagreement of opinion,' or 'an instance of disagreement

13

or a point upon which there is disagreement.'" *Hernandez*, 309 S.W.3d at 664. We address each element in turn.

Self-defense is an issue in this case because self-defense was arguably raised by the evidence and there was an instruction on self-defense in the jury charge. *See Lee*, 259 S.W.3d at 790. The facts show that appellant sought an explanation or discussion regarding his differences with the complainant. Appellant confronted the complainant about the dog bite and sought compensation from the complainant. The complainant refused to pay appellant and told appellant to shoot the dog instead. Testimony at trial also revealed that several of the witnesses did not believe that appellant had been bitten. The jury could have concluded that the complainant's lack of concern for appellant was evidence that the complainant and appellant not only disagreed about the cause of appellant's alleged injuries but also about the appropriate means to remedy appellant's alleged injury. Third, appellant was unlawfully carrying a weapon under section 46.02 of the Penal Code. Appellant had a gun, did not have a license to carry, and was not carrying the gun on his premises or to his car.

Viewing the evidence in the light most favorable to giving the instruction, we conclude that a rational jury could have found every element of the section 9.31(b)(5) charge beyond a reasonable doubt. Because we conclude that the trial court did not err in submitting both the section 9.31(b)(4) instruction and the 9.31(b)(5) instruction, we overrule appellant's second issue.

## III.    Exclusion of Witness's Remote Prior Conviction under Rule 609

The trial court excluded evidence of Robert Washington's 1987 attempted murder conviction. The trial court found that the prejudicial effect of admitting this evidence would outweigh its probative value. On appeal, appellant argues that the trial court abused its discretion when it excluded the prior conviction evidence

because an application of the *Theus* factors favors admission in this case. *See Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992). We disagree.

### A. Standard of Review

We apply an abuse-of-discretion standard of review when assessing a trial court's ruling on the admissibility of evidence. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). We review the trial court's ruling in light of what was before the court at the time the ruling was made, and we will uphold the ruling if it was within the zone of reasonable disagreement. *Id.* at 39.

Error involving the admission or exclusion of evidence is generally non-constitutional. *See id.* at 43; *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002). Therefore, if we find that the trial court abused its discretion, we will analyze harm under Texas Rule of Appellate Procedure 44.2(b) to determine whether the trial court's decision affected appellant's substantial rights. *Billodeau*, 277 S.W.3d at 43. Substantial rights are not affected if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

### B. Application of the *Theus* factors favors exclusion of the prior attempted murder conviction.

Rule 609 governs the admission of evidence regarding a witness's prior convictions. Evidence of a witness's prior conviction is not admissible if more than ten years have elapsed since the later of the conviction date or the release date unless the court determines that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. Tex. R. Evid. 609(b). When conducting the balancing test required by rule 609, courts generally look at the following nonexclusive list of factors:

(1) the impeachment value of the prior crime;

15

(2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history;

(3) the similarity between the past crime and the offense being prosecuted;

(4) the importance of the defendant's testimony; and

(5) the importance of the credibility issue.

*Theus*, 845 S.W.2d at 880; *see also Celis v. State*, 369 S.W.3d 691, 695 (Tex. App.—Fort Worth 2012, pet. ref'd) (adapting *Theus* factors to cases in which the witness subject to impeachment is not the defendant); *Moore v. State*, 143 S.W.3d 305, 312–13 (Tex. App.—Waco 2004, pet. ref'd) (same); *Arroyo v. State*, 123 S.W.3d 517, 520 (Tex. App.—San Antonio 2003, pet. ref'd) (same).

The first *Theus* factor favors exclusion because appellant tried to introduce Washington's conviction for attempted murder, a crime of violence with a high potential for prejudice. *See Theus*, 845 S.W.2d at 881; *Vasquez v. State*, 417 S.W.3d 728, 732 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The second *Theus* factor favors exclusion because the attempted murder conviction was not recent, having occurred twenty-six years before Washington testified, and because the prior conviction evidence that was admitted—a 2000 forgery conviction and a 2010 failure-to-identify conviction—did not indicate that Washington had a "demonstrated pattern" of running afoul of the law. *See Vasquez*, 417 S.W.3d at 732; *Huerta v. State*, 359 S.W.3d 887, 893 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The third *Theus* factor favors exclusion because the similarity between Washington's attempted murder conviction and the crime charged might have caused the jury to discount Washington's credibility on the perception of past conduct instead of on the facts of the case. *See Theus*, 845 S.W.2d at 881; *Vasquez*, 417 S.W.3d at 732–33. This is especially true in this case because appellant's

16

counsel admitted that her purpose was not to impeach Washington but to show that Washington had a propensity for using guns. The last two related *Theus* factors favor exclusion because the State offered compelling evidence of appellant's guilt independent of Washington's testimony, which lessened the importance of Washington's testimony and credibility, and because the trial court admitted the prior forgery and failure-to-identify convictions, which impugned Washington's credibility. *See Theus*, 845 S.W.2d at 881.

None of the *Theus* factors favor admission in this case, indicating that the danger of unfair prejudice did outweigh the probative value of the prior-conviction evidence. For this reason, we conclude that the trial court did not abuse its discretion when it excluded Washington's 1987 conviction for attempted murder. We overrule appellant's third issue.

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the trial court's judgment.

/s/    Marc W. Brown
      Justice

Panel consists of Justices Boyce, Christopher, and Brown.
Do Not Publish — TEX. R. APP. P. 47.2(b).

17