

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00413-CR

FREDERICK JEROME ROBERTS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 11,907, Honorable Dan Mike Bird, Presiding

November 14, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

A jury convicted appellant Frederick Jerome Roberts of the offenses of aggravated assault with a deadly weapon,[1] evading arrest with a vehicle[2] and unlawful possession of a firearm,[3] found an enhancement true, and assessed sentences of

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

[2] TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West 2011).

[3] TEX. PENAL CODE ANN. §46.04(a) (West 2011).

imprisonment for 75 years, 20 years and 10 years respectively. Appellant has appealed, and we will affirm.

## Background

At trial, appellant plead not guilty and the State presented the testimony of several witnesses. Appellant presented the testimony of Mikea Williams.

Kametria Daniels testified that late in the afternoon on a day in April 2014, she was at a park in Vernon, Texas, with her son. Daniels was talking with two friends, Shatara Scott and Darrell Straughter. While there, Daniels saw two people she knew arrive at the park. The first was Daniels' cousin, Williams; the second was Sport Fobbs. Daniels watched Williams and Fobbs as they argued and fought. Both were bleeding afterward. Scott testified she saw Williams hit Fobbs with a gun during their fight.

Williams testified she and Fobbs had an ongoing relationship. Fobbs testified their relationship was sexual, and had been "off and on" for "about nine or ten years."

Williams testified she was also in a relationship with appellant and the couple lived together. Both Fobbs and Williams testified that Fobbs had a confrontation with appellant earlier in the day. Williams agreed to meet with Fobbs to talk about it. They met at the park.

Williams arrived at the park in her Trailblazer. Williams and Fobbs both admitted they fought and that both suffered injuries. Fobbs testified Williams pointed a gun at his face and threatened him. Fobbs "slapped the gun away from [his] face" and it hit Williams in the mouth. He also "swung at her." Williams "smacked [him] with the pistol

2

in [his] face," causing a cut that required stitches. While Williams denied pointing a gun at Fobbs, she admitted she had a dark gray or black revolver in her car and that she had "showed [Fobbs] the gun." She also admitted she hit Fobbs in the head with the gun during their fight.[4]

After Fobbs and Williams quit fighting, Williams left the park and went home where she told appellant about her fight with Fobbs. Appellant "left. He was storming out the door. I jumped in the car with him." A few minutes later, she returned to the park with appellant driving her vehicle. Williams told the jury she saw Straughter "pass [Fobbs] a gun" that she described as a black gun with a "clip in it." Fobbs denied having a gun. Fobbs testified he saw appellant and Williams arrive at the park in Williams' car and he thought appellant wanted to fight. But, in appellant's hand Fobbs saw "a pistol and he pointed it right [at] me, and then he started shooting the gun." Fobbs testified the gun shown to him by the prosecutor looked like the gun appellant had that day.[5] Daniels testified she saw appellant jump out of the vehicle and he "started shooting" at Fobbs. She thought she heard six shots. She described the gun as "a small gun." She said she did not see Fobbs with a gun. Scott testified appellant "immediately started shooting" toward Fobbs after he got out of the Trailblazer.

Williams testified she did not see appellant with a gun and she had removed her gun from her car when she went home. She testified the gun shown to her at trial was

---

[4] At the time of appellant's trial, Williams was incarcerated for aggravated assault with a deadly weapon against Fobbs.

[5] But another witness, Ben McBride, testified he had seen Williams with a gun at his bar earlier that day. He did not "think that was the same gun" when shown the State's exhibit at trial.

not her gun.[6]  But she acknowledged it was possible appellant had a gun.  Several witnesses, including Fobbs, Daniels, Straughter, Scott and McBride testified appellant shot at Fobbs.  Fobbs tried to get in Daniels' car but when she told him her child was in the car, he ran and jumped over a fence.  He told the jury, "I was terrified. I thought I was going to die.  I just didn't know what was going to happen."

Williams testified that when she heard shots, she went toward Daniels' car but then went back to her car and got in the back seat.  Appellant got into the car and they began to drive off.  Williams saw another woman and got out of the car to argue with her about another matter.  Appellant told Williams to get back in the car and the couple drove away.

Sergeant Wayne Hodges of the Vernon Police Department responded to the incident at the park.  When he arrived, he saw a Trailblazer leaving "at a high rate of speed."  He followed the vehicle for several blocks until it stopped and the driver jumped out and ran.  Hodges lost sight of the driver so he got out of his car and ran until he saw the Vernon Chief of Police and Sergeant Wendell Smith with a person on the ground.  The patrol car videos from Hodges' and Smith's cars were admitted into evidence.  Detective Mickey Allen testified he found a black revolver in front of the outside of the vehicle.  No fingerprints could be obtained from the gun and no gunshot residue was found on appellant's hands.

Williams' testimony also described what she referred to as "the chase."  She said she ducked her head because she was bouncing to the vehicle's roof as they sped

---

[6] She did say, "if that's the same gun, that could have been a gun [appellant] threw out the back door" of their home on an earlier occasion.

4

through intersections and when she looked up, appellant was no longer in the vehicle. She "could see him running." The vehicle came to a stop, she got out, and "waited for the police to come up."

Analysis

Through four points of error, appellant contends the evidence presented at trial was insufficient to prove: (1) he intentionally threatened Fobbs with bodily injury by firing a weapon at him; (2) that he intentionally fled from a peace officer attempting to lawfully arrest him; and (3) that he intentionally or knowingly possessed a firearm before the fifth anniversary of his release from confinement. Further, appellant contends he was denied his right to a fair trial when the trial court refused to charge the jury on self-defense.

To convict appellant of aggravated assault, the State was required to prove beyond a reasonable doubt that he intentionally or knowingly threatened another with imminent bodily injury while using or exhibiting a deadly weapon. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). A deadly weapon includes "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West 2011).

To convict him of evading arrest or detention using a vehicle, the State had to prove beyond a reasonable doubt that appellant intentionally fled from a person he

5

knows is a peace officer attempting lawfully to arrest or detain him and that he used a vehicle to do so. TEX. PENAL CODE ANN. § 38.04(a),(b) (West 2011).

To convict appellant of unlawful possession of a firearm by a felon, the State was required to prove that appellant, having been previously convicted of a felony, possessed a firearm before the fifth anniversary of his release from confinement. TEX. PENAL CODE ANN. § 46.04(a)(1) (West 2011).

Appellant contends the evidence raised an issue of self-defense. It is a defense to prosecution if a person's conduct is justified by Chapter 9 of the Texas Penal Code. TEX. PENAL CODE ANN. § 9.02 (West 2011). Under Chapter 9, a person generally is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against another's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a). When the force in question is deadly, the person is justified in using such force in self-defense if the above test is met and the person reasonably believes that deadly force is immediately necessary either to protect himself against the other's use or attempted use of unlawful deadly force.

The defendant has the initial burden of production and must bring forth some evidence to support the defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Hernandez v. State,* 309 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Once the evidence is produced, the State bears the burden of persuasion to disprove the defense. *Id.* This burden does not require the production of additional evidence rebutting self-defense; it requires the State to prove its case beyond a reasonable doubt. *Id.* When the trier of fact finds the defendant guilty, there is an

6

implicit finding rejecting the defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *Hernandez,* 309 S.W.3d at 665.

When an appellant challenges the legal sufficiency of the evidence to support rejection of a defense such as self-defense, the question is not "whether the State presented evidence which refuted appellant's self-defense [evidence]." *Saxton,* 804 S.W.2d at 914. Rather, we examine all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the alleged offenses, and (2) against appellant on the self-defense issue. *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010); *Saxton*, 804 S.W.2d at 914; *Hernandez,* 309 S.W.3d at 665. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony; accordingly, we presume the trier of fact resolved any conflicting inferences and issues of credibility in favor of the judgment. *Dearborn v. State*, 420 S.W.3d 366, 371-373 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The trier of fact is free to accept or reject defensive evidence on the issue of self-defense. *Saxton*, 804 S.W.2d at 914. In reviewing the sufficiency of the evidence to support a conviction, we utilize the "hypothetically correct jury charge" standard, which includes the statutory elements of the offense as modified by the charging instrument. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

As noted, aggravated assault occurs when a person uses a deadly weapon to intentionally or knowingly threaten another with imminent bodily injury. TEX. PENAL CODE ANN. §§ 22.01(a)(2); 22.02(a)(2). Several witnesses testified they saw appellant shoot at Fobbs. Straughter testified appellant shot at Fobbs at close range multiple

times.  He also told the jury appellant got out of the Trailblazer, said "do you think I'm playing with you, I'll kill you" and started shooting.  Straughter testified he saw appellant pull the trigger and appellant was "running towards [Fobbs]."  Evidence showed a revolver was found on the ground in front of the Trailblazer appellant drove from the park.  Appellant did not have gun residue on his hands and the evidence did not establish whether the revolver was recently fired.

Appellant contends the evidence fails to show he shot at Fobbs.  He says the conflicting evidence shows at most that he shot in Fobbs' direction, an action perhaps amounting to recklessness, but not showing the intentional or knowing conduct required for conviction.

We disagree with appellant's view of the evidence.  We conclude a rational trier of fact could have accepted the testimony of multiple witnesses that appellant was the person with the gun and the person who shot at Fobbs.  Fobbs testified he and appellant had a confrontation earlier in the day and he believed appellant wanted to fight him.  Williams testified she was seeing both men at the same time and Fobbs testified appellant was aware of that infidelity.  Williams also testified she left the park and went home where she told appellant about the fight with Fobbs.  Appellant "left.  He was storming out the door."  Straughter testified to appellant's threats to kill Fobbs just before he began firing the gun.  Keeping in mind the jury's role to resolve conflicting inferences in evidence, we readily find the evidence sufficient to permit a rational juror to conclude beyond reasonable doubt appellant intentionally or knowingly used a firearm to threaten Fobbs with imminent bodily injury.

We also conclude a rational trier of fact could have found beyond reasonable doubt appellant shot at Fobbs and was not justified in doing so to protect himself against any use or attempted use of unlawful deadly force by Fobbs. Contrary to the testimony of several witnesses, Williams was the only witness who said a man handed a gun to Fobbs and was the only witness who said appellant did not shoot or have a gun. Williams did not tell police Fobbs had a gun. McBride specifically testified Fobbs "didn't have one" when asked whether he ever saw Fobbs with a gun.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found appellant guilty of aggravated assault beyond a reasonable doubt by choosing to believe the evidence favoring conviction and by choosing to disbelieve any evidence favoring self-defense. *Smith v. State*, 352 S.W.3d 55, 63 (Tex. App.—Fort Worth 2011, no pet.); *see also Dearborn*, 420 S.W.3d at 374.

And, the trial court did not err in refusing to include in the jury charge an instruction addressing self-defense. *Granger v. State,* 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence without regard to the strength or credibility of the evidence raising it. *Granger,* 3 S.W.3d at 38; *Brown v. State,* 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). "To rely on self-defense as a justification for his conduct, the defendant must first admit or substantially admit committing the conduct which forms the basis of the indictment; the defense is inconsistent with a denial of conduct." *Reynolds v. State,* No. 07-11-00500-CR, 2012 Tex. App. LEXIS 10501, at * 6-7 (Tex. App.—Amarillo Dec. 19, 2012, no pet.) (mem. op., not designated for publication). A defendant does not have to testify in order to raise the defense; defensive issues may be raised by the

testimony of any witness, even those called by the State.  *Id.* at *7 (citations omitted).

When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission." *Id.* (citations omitted).  However, "if the evidence, viewed in the light most favorable to the defendant, does not establish self-defense, the defendant is not entitled to an instruction on the issue."  *Id.* at *7-8.

Like Reynolds*,* appellant here maintains the evidence presented at trial raised the issue of self-defense, entitling him to an instruction to the jury on that issue.  We disagree.  Appellant points to the evidence Williams and Fobbs fought, and to Williams' testimony she saw Straughter pass a gun to Fobbs before Williams heard gunshots; she did not see who was firing the shots; she did not see appellant with a gun; there was not a gun in the vehicle when they drove away from the park; appellant did not throw a gun from the vehicle, and she told a Vernon detective that Fobbs had a gun at the park when shots were fired.  Williams also said appellant responded "they're trying to kill me" when she asked, during "the chase," why he was running from the police.

Williams' testimony provides the only possible evidence supporting a self-defense instruction.  And absent from her testimony is any admission appellant fired shots in Fobbs' direction, or otherwise made any use of a firearm.  *See, e.g., Martinez v. State,* 775 S.W.2d 645, 645 (Tex. Crim. App. 1989) (defendant charged with murder admitted to pulling gun, firing into the air and having his finger on the trigger when fatal shot fired; denial of intent to kill did not preclude instruction on self-defense); *East v. State*, 76 S.W.3d 736, 738 (Tex. App.—Waco 2002, no pet.) (*quoting Martinez).* Appellant did not, at trial, "substantially admit committing the conduct which forms the

10

basis of the indictment." *Reynolds,* 2012 Tex. App. LEXIS 10501 at *6.[7] Accordingly, appellant was not entitled to the instruction at trial and the trial court did not err in refusing it.

We overrule appellant's first and fourth points of error.

We turn next to appellant's challenge to the sufficiency of the evidence supporting his conviction for unlawful possession of a firearm. The record shows appellant was previously convicted for a felony in December 2010 and confined for the offense for a period of two years. Too, we have determined that sufficient evidence supports appellant's aggravated assault with a firearm on April 8, 2014, a date less than five years after his release. Also, Williams testified appellant had guns in their home and that appellant repaired guns for others on occasion. Accordingly, a rational fact-finder could have found beyond a reasonable doubt that appellant committed the offense of unlawful possession of a firearm. We overrule appellant's third point of error.

Lastly, we consider appellant's contention the evidence was insufficient to prove he intentionally fled in a vehicle from a person he knew was a peace officer attempting lawfully to arrest or detain him. He compares the events shown by this record with those in *Redwine v. State,* 305 S.W.3d 360 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd), in which the appellate court found the evidence insufficient to show Redwine knew peace officers were attempting to arrest or detain him. Like appellant, Redwine

---

[7] As noted in our discussion of appellant's challenge to the sufficiency of the evidence supporting his conviction for the assault on Fobbs, on appeal appellant acknowledges the evidence might show he shot recklessly in Fobbs' direction, but he made no such concession in front of the jury.

11

was charged with the provision of Penal Code section 38.04 requiring proof he used a vehicle in his flight from a peace officer. *Id.* at 362. The evidence there showed Redwine was driving on a rural asphalt road when he met a sheriff's office patrol car coming from the opposite direction. Redwine continued down the road and then turned onto a dirt driveway. Although the deputies turned their vehicle around and began to pursue Redwine, they did not turn on their emergency lights or siren. By the time the deputies reached the end of the dirt driveway where Redwine's truck was sitting, he had left the vehicle and run into the forest. The deputies then began to shout to Redwine, who eventually returned to his truck and was arrested. *Id.* at 362. After analyzing the specifics of the evidence, the court concluded it was not sufficient to prove beyond reasonable doubt that Redwine, while in his truck, knew the deputies were attempting to arrest or detain him. *Id.* at 368. Appellant likewise contends there was no evidence he knew Sergeant Hodges was attempting to arrest or detain him while appellant was driving the Trailblazer. He asserts Hodges made no "show of authority" until after appellant got out of the vehicle.

The facts shown here are very different from those in *Redwine.* 305 S.W.3d at 361-62; *see also Griego v. State*, 345 S.W.3d 742, 750-52 (Tex. App.—Amarillo 2011, no pet.) (discussing *Redwine*). Evidence shows that appellant was driving the Trailblazer from the park when Sergeant Hodges began his pursuit in a marked patrol car. Hodges testified he pulled "right behind" the Trailblazer and "hit [his] lights and sirens at the same time." The patrol car video shows the officer's lights and sirens were on. Hodges' testimony also showed that appellant sped up at that point and that his flight in the vehicle included violation of a stop sign at a high-traffic intersection and

12

ended when appellant pulled to the side of the road, bolted and ran. Williams testified that as appellant drove from the park, a police vehicle drove toward them, "whipped around and turned his lights on." She said appellant "started to speed up." During "the chase," appellant drove "[a]bout four blocks" after the officer turned his patrol car lights on, she was "yelling at appellant to stop," and appellant left the driver's seat and ran while the vehicle was still moving. Particularly in view of the evidence of the shooting that immediately preceded appellant's flight, the jury was not acting irrationally to conclude appellant was aware that the officers who were behind him with lights and sirens were attempting to arrest or detain him. *See, e.g., Reyes v. State,* 465 S.W.3d 801, 805-06 (Tex. App.—Eastland 2015, pet. ref'd).

The evidence was sufficient to establish appellant's guilt of the evading offense. His second point of error is overruled.

Conclusion

Having resolved each of appellant's four points of error against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Pirtle, J., concurs in the result.

Do not publish.

13